UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

STACEY KING,

    Plaintiff,

    v.　　　　　　　　　　　　　　　　　　Case No. 4:16-cv-63-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

    Defendant.

**OPINION AND ORDER**

Plaintiff Stacey King seeks judicial review of the Social Security Commissioner's decision denying her disability benefits, and asks this Court to remand the case. For the reasons below, this Court affirms the ALJ's decision.

**A.**　　**Overview of the Case**

Plaintiff alleges that she became disabled on October 11, 2011. (R. at 60.) Plaintiff previously ran a daycare center, but has not worked since 2013. (R. at 29.) The Administrative Law Judge ("ALJ") found that Plaintiff suffered from two severe conditions (R. at 12.), but the ALJ concluded that she could perform some light, unskilled work. (R. at 16.) Therefore, the ALJ denied her benefits. (R. at 17.) This denial became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.) Plaintiff's date last insured ("DLI") is December 31, 2017. (R. at 11.)

**B.     Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

**C.     Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.     Analysis**

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, she argues that the ALJ discredited her pain allegations because she broke her pain management contract and discounted her need to elevate her leg.

**(1)** *The ALJ Properly Analyzed Why Plaintiff Stopped Taking Narcotic Pain Medication*

Plaintiff contends that the ALJ improperly faulted her for ceasing narcotic pain medications, but the ALJ can do that if she had no good reason to stop treatment, *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014), or if weaker medication sufficiently relieved her symptoms, *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Plaintiff took narcotics for two years, but her doctor took them away after she tested positive for marijuana. (R. at 38–39.) She alleges that this was a one-time episode. (R. at 13.) She also claims that she never sought narcotics after that because she did not want to get addicted. (R. at 42.) The ALJ, however, believed that she did not need narcotics in the first place and therefore concluded that Plaintiff's pain was not as severe as alleged. Substantial evidence supports this conclusion.

The ALJ reasonably questioned Plaintiff's need for the narcotics. The ALJ noted how doctors increased Plaintiff's narcotics dosages "[d]espite her negative findings" and continued her on them even with normal follow-ups. (R. at 14.) Lastly, after losing her narcotics, Plaintiff began taking Aleve, which relieved her pain. (R. at 41.) A doctor's report, taken nine months after Plaintiff lost her narcotics, said she was "managing her pain with OTC meds." (R. at 625.) The ALJ properly discounted Plaintiff's pain allegations because she did not appear to need narcotics.

The ALJ may have also doubted Plaintiff's claim that she only smoked marijuana that one time. He referred to the incident as "seemingly isolated" and concluded that she "has not been able to" get any more narcotics. (R. at 14.) In other words, Plaintiff did not seek narcotics because she knew she would test positive for marijuana again. Substantial evidence supports this theory as well. Plaintiff testified that her marijuana use was "somewhat of an isolated incident" and only denied using marijuana "regularly." (R. at 38.) Furthermore, Plaintiff knew that she

3

could not get narcotics if she continued smoking marijuana. (R. at 634.) Her own words suggest that she continues smoking marijuana on a limited basis.

The ALJ did not err in discrediting Plaintiff for ceasing narcotic medications.

**(2)** *The ALJ Properly Discredited Plaintiff's Alleged Leg-Elevation Requirement*

Plaintiff testified that she elevated her leg above her heart for thirty minutes every hour. (R. at 30–31.) According to the Vocational Expert, Plaintiff could not work given this limitation. (R. at 50.) The ALJ, however, did not include this restriction in his residual functional capacity ("RFC") analysis. (R. at 21.) An ALJ may omit any limitation that he properly discredits. *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). Here, the ALJ omitted the leg-elevation requirement because no doctor instructed Plaintiff to elevate her legs since January 2012 and because Plaintiff did not use a cane or similar device. (R. at 15.) Although the second reason is error, the first reason, standing alone, adequately supports the ALJ's decision to omit the leg-elevation requirement.

(a) *The Record Does Not Show that Plaintiff Must Elevate Her Legs Frequently*

In November 2011, Plaintiff had surgery on her left leg (R. at 458.) The wounds did not heal properly. (R. at 448.) Dr. Lai recommended that Plaintiff elevate her leg above heart level two to four times daily to control her injury. (R. at 438–47.) She recommended this four times, most recently in January 2012. (R. at 438.) After a few weeks, Dr. Lai reduced this recommendation to "[k]nee-high gradient compression stockings." (R. at 436.) Two months later, one wound healed and the other required only observation, so Dr. Francis only recommended that Plaintiff "perform warm compresses about 3 times a day." (R. at 427.)

4

When a doctor takes a patient off medication in response to improving symptoms, she implies that the patient no longer needs that medication. *Evans v. Colvin*, No. 14 C 1088, 2015 U.S. Dist. LEXIS 74701, at *23–25 (N.D. Ill. June 10, 2015). This same logic applies to non-medication treatment. Here, Dr. Lai seems to have recommended leg elevation to address post-surgery complications that have since been resolved. The ALJ even notes that neither Plaintiff's oncologist nor her pain management specialist recommended leg elevation afterward. (R. at 15.) Thus, the ALJ did not include such restrictions in his RFC analysis.

Plaintiff, however, continued elevating her legs sporadically. In March 2014, Dr. Kusumi noted that leg elevation relieved Plaintiff's pain. (R. at 573.) Around that time, Plaintiff reported to her physical therapist that she needed to "elevate her legs throughout the day." (R. at 666.) Dr. DiMartino noted in July 2014 that Plaintiff's swelling "improve[d] with elevation." (R. at 638.) But by December, Dr. DiMartino only mentioned the compression hose when discussing Plaintiff's swelling. (R. at 623.) While elevating her legs likely helped relieve Plaintiff's swelling, no doctor since January 2012 required her to do so. The ALJ thus built the required logical bridge from the evidence to his conclusion.

(b)  *The ALJ's Cane-Requirement Discussion Was Harmless Error*

The ALJ noted that Plaintiff did not use a cane or similar device. (R. at 15.) He therefore added no cane requirement to Plaintiff's RFC analysis. *Id.* However, the ALJ went too far by discrediting Plaintiff's alleged pain and swelling because she did not need a cane. *Id.* An ALJ cannot invent a treatment plan and then fault the plaintiff for not following it. *Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009). The ALJ did so here.

Yet, the ALJ gave another reason to omit the leg-elevation requirement. If an ALJ relies on valid and invalid reasons, his conclusion will stand if the valid reasons, by themselves, support it with substantial evidence. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). Here, the ALJ noted how no doctor recommended leg elevation after January 2012. (R. at 15.) Furthermore, the doctor who instructed Plaintiff to elevate her legs only asked Plaintiff to lift her leg two to four times daily, not for thirty minutes every hour. *Id.* Because ignoring the cane-requirement discussion would leave the accurate and logical bridge intact, the ALJ's error is harmless.

**E.     Conclusion**

The ALJ properly analyzed Plaintiff's credibility regarding what he perceived to be the real reason why Plaintiff stopped taking narcotic pain medication. The ALJ also supported his decision to discount Plaintiff's leg-elevation requirement with substantial evidence. Although the ALJ erred in inventing a cane requirement, this error was harmless. Accordingly, this Court affirms the ALJ's decision.

SO ORDERED on January 31, 2018.

 S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE